UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MARY KRISTINA STONE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:18-CV-023 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

On January 16, 2018, Plaintiff Mary Stone filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying her application for social security disability benefits [DE 1]. The matter is fully briefed and ripe for decision [DEs 14-16]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I. FACTS

Stone filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in April 2014, alleging an onset date of September 30, 2012.[1] Stone contends that she is unable to work primarily because she suffers from degenerative disc disease of her entire spine, obesity, carpal tunnel syndrome ("CTS"), headaches, and depression/anxiety. By the age of thirty-one, Stone quit several waitressing jobs because her severe back and hand

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq.* Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

pain required her to get help from coworkers or call-off sick, and oftentimes, she went home crying in pain.

With respect to Stone's bilateral hand problems, she had surgery for CTS in 2007. By late 2011, she was again experiencing numbness and tingling in her hands. On November 30, 2012, a physical exam revealed a positive Phalen's test and she was again diagnosed with CTS (R. at 529-30). On March 17, 2016, Stone underwent a bilateral median nerve block at the wrists (R. at 821-24) and she has continued to seek treatment for her hand problems (R. at 411, 544, 802, 811, 840, 893, 981).

As for Stone's back problems, an MRI of Stone's lumbar spine on May 31, 2013, revealed a right-sided focal paracentral disc protrusion at L5-S1, a slight displacing of the S1 nerve root, a tiny left paracentral disc protrusion at L4-5, and mild bilateral facet arthropathy at L4-5 and L5-S1 (R. at 396). Later that year, she reported having progressive back pain with radiation to her hips for several years (R. at 411). Despite taking strong pain medicine, wearing a TENS unit, and undergoing epidural steroid injections, physical therapy, and chiropractic manipulations, Stone's back and neck pain persisted. Stone underwent back surgery in April 2016, after an MRI of her thoracic spine revealed a large disc herniation at T9-T10 (R. at 549, 592). Despite surgery, Stone continued to suffer from an extruded lumbar disc at the L5-S1 and L4-5, along with cervical disc problems (R. at 550). Stone's surgeon opined that she would not be able to return to work due to her need to recuperate and undergo further surgeries (R. at 948, 962, 979-90). Meanwhile, Stone has also suffered from chronic headaches and some anxiety/depression for which she tried counseling and taking an antidepressant (R. at 484-85, 596, 628-30, 664-67, 679-81, 694-96).

Despite this medical history, Stone's applications were denied initially in September 2014, and on reconsideration in November 2014. On November 15, 2016, Stone and a vocational expert ("VE") testified during a hearing held before Administrative Law Judge Shane McGovern ("ALJ") (R. at 34-83). Stone explained how her pain severely limits her physical activity and prevents her from sitting, standing, or walking more than fifteen minutes. She testified that her surgeon has indicated that she will need to have more back surgeries affecting her entire spine. Stone also stated that she continues to suffer from bilateral hand numbness and wrist pain which causes her to drop things. She didn't think that she could lift more than a full pot of coffee. As for her headaches, Stone described them as being severe. Despite taking medication, Stone's headaches still occur at least three to five times a week, can last all day, and prevent her from getting out of bed. As for Stone's mental health, it was acknowledged that Stone is currently not undergoing counseling.

The VE's testimony was based strictly on the (relevant) hypothetical posed to him, which offered an assigned residual functional capacity ("RFC")[2] of light work with normal breaks and additional exertional and environmental limitations. Per the VE, given the assigned RFC, Stone would be able to perform unskilled work as a bench assembler, routing clerk, and electrical assembler.

The ALJ issued a decision on December 30, 2016, denying Stone disability benefits and concluding that Stone was not disabled under the Social Security Act because she was able to perform other work in the economy. The Appeals Council then denied Stone's request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*,

---

[2] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

732 F.3d 702, 707 (7th Cir. 2013). Stone seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the

5

burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Stone argues that remand is required because the RFC assessment is not supported by substantial evidence and it fails to accommodate her documented physical and mental limitations.[3] As explained below, the Court agrees with Stone and concludes that this error requires remand.

## IV. ANALYSIS

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ in this case concluded that Stone had the RFC to perform a limited range of light work, which is defined as lifting no more than twenty pounds at a time with frequent lifting

---

[3] To the extent Stone's counsel further contends that the ALJ erred at step two by not finding that Stone suffered from a "severe" mental impairment, such a mistake would not matter because other impairments were found to be severe at step two. *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015). Thus, the real issue concerns whether the ALJ properly considered all of Stone's severe and non-severe impairments, along with the objective medical evidence, her symptoms, and her credibility when determining her RFC. *Id*.

6

or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b); SSR 83-10. A job may also be considered light work if it requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday, with intermittent sitting; or, if it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id*.; *Haynes v. Barnhart*, 416 F.3d 621, 627 n. 1 (7th Cir. 2005).

After examining the record, the Court finds that the ALJ's RFC determination was not fully grounded in Stone's medical evidence or her testimony, especially with respect to the limitations caused by Stone's headaches, CTS, and back problems.

As for Stone's headaches and CTS, the ALJ mischaracterized the evidence thereby discounting their severity. For instance, the ALJ cited medical evidence from June 2016, indicating that Stone's "headaches have improved" and she did not appear to be in acute distress (R. at 20, citing R. at 629). But this same medical record *actually* indicates that Stone's headaches had only "mildly improved," and that, rather than suffering from headaches "more than half [of] a month," she was down to "10 per month." Moreover, the same medical record *actually* indicates that despite a normal magnetic resonance angiography of Stone's head and neck, Stone was "still having headaches," for which, another medication was prescribed. Just five months later, Stone's testimony corroborated the fact that although the frequency and severity of her headaches had been reduced, she still suffered from several debilitating headaches every week. Thus, the ALJ erred by not articulating how this evidence, which favored Stone, was considered. *Zurawski*, 245 F.3d at 888-89.

Similarly, the ALJ's opinion mischaracterized the evidence relative to Stone's CTS. After noting Stone's history of CTS and complaints of residual hand numbness, the ALJ concluded that Stone's CTS "did not more than minimally limit her during the period at issue" because the

majority of her treatment for CTS occurred before the alleged onset date (R. at 20). But this statement by the ALJ is wholly inaccurate. In truth, a host of medical records reveal that Stone persistently complained of bilateral hand problems, consistently received a CTS diagnosis, underwent a nerve block on her writs, and had further CTS surgery recommended—all *after* September 30, 2012 (R. at 411, 529-30, 544-46, 802, 811, 821-24, 840, 893, 981). Nor was it acceptable for the ALJ to cherry-pick a medical record from September 2014, indicating that Stone could "handle coins and perform fine movements" (R. at 20, 25), without acknowledging Stone's more recent testimony that she repeatedly dropped objects and could no longer draw due to her hand problems. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Thus, without a discussion of this evidence favoring Stone's claimed hand limitations and headaches, redetermination of Stone's RFC is necessary.

Also necessitating remand is the ALJ's flawed analysis concerning the extent of Stone's limitations caused by her degenerative disc disease. Throughout the ALJ's opinion, the ALJ repeatedly discounted Stone's complaints of back pain (and discounted the treating surgeon's opinion that Stone was unable to work) because various medical records documented Stone as having "full muscle strength" with the ability to "ambulate normally" and without her being in "acute distress" (R. at 24-25). However, of the approximate two dozen medical record notations cited by the ALJ (as demonstrating Stone's not appearing in "acute distress" during examinations), the vast majority of those notations were made in the context of examinations wholly unrelated to Stone's back pain. For instance, it was observed that Stone was not in acute distress during medical appointments for the flu, cellulitis of the face, abdominal pain, hyperthyroidism, depression, insomnia, right shoulder pain, and various female-related concerns such as uterine bleeding. Of the mere handful of medical records that actually concerned Stone's

8

seeking treatment for her back pain (wherein she didn't appear in acute distress), those same medical records documented that Stone was experiencing chronic radicular back pain and a restricted range of motion in her spine. These records also indicated Stone's being considered a surgical candidate due to her ongoing back pain which went unresolved with more conservative treatment. Thus, without an explanation of what the recording medical professionals meant by "no acute distress," it cannot be simply assumed, as the ALJ did, that they meant that Stone did not experience back pain to the degree that she alleged. *See*, *e.g.*, *Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015) (noting that "acute" can refer to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed to a chronic condition or symptom having a slow development and a protracted but mild course; and, for physicians' purposes, "no acute distress" can simply mean that a patient will probably not become unstable in the next five minutes). Further, Stone testified to experiencing days where her pain was less severe; thus, the fact that she was not in apparent acute distress at the times of certain examinations is too thin to support an inference that she did not experience the degree of back pain and limitations that she alleged. *See id*.

In addition, the ALJ's cherry-picked references to Stone's "ambulating normally" and having "full muscle strength" similarly fail to provide the substantial evidence needed to support the ALJ's RFC assessment. Some of these notations are (once again) taken from records pertaining to Stone's treatment for migraines, CTS, and female-related problems, as opposed to her treatment for back problems. Moreover, many of the same medical records relied upon by the ALJ *actually* contain notations and exam results supporting Stone's claim of debilitating back pain; such as, the following: "flat back restricted ROM in flexion and extension," "pain with lateral bending," "mild thoraco-lumbar scoliosis," "lumbar paraspinous muscle spasm,"

"tenderness to palpation spinous process," "patient ambulates with difficulty and exhibits guarding and antalgic behavior," "patient exhibits severe pain with range of motion maneuvers of the lumbar spine," positive bilateral straight raise tests, and "persistent and worsening neck and back problems." In sum, the ALJ's exclusion of this line of significant evidence supporting Stone's claim for disability fails to demonstrate that the ALJ considered the full extent of Stone's back pain and its limiting effects. *See Denton*, 596 F.3d at 425. While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering a decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See id.* Because the ALJ's assessment of Stone's RFC is not supported by substantial evidence or an adequate discussion of the actual evidence, the determination cannot stand.[4] 42 U.S.C. § 405(g); SSR 96–8p.

The Court would further note that each of the state agents (both reviewers and examiners alike), who opined that Stone was capable of performing light work, failed to consider two-years-worth of medical records, which detailed Stone's ongoing health problems. In giving the state agent opinions "considerable weight," the ALJ did not bother to acknowledge the extent of the medical records that went unreviewed by the agents. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and

---

[4] Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Stone's claimed (and potentially credible) limitations. Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Stone can perform, and so the conclusions reached at steps four and five cannot be affirmed. *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p.

10

ineffective."). Furthermore, the ALJ's conclusion that the state agent opinions deserved considerable weight because they were "consistent with the medical record[s]" which "generally describe[] [Stone] as being not in acute distress with full muscle strength and the ability to walk"—does not supply the substantial evidence needed to support the ALJ's RFC assessment, for the reasons previously explained.[5] Because significant evidence existed which indicated that Stone's CTS, headaches, and back pain were not resolved and that she continued to suffer from limitations as a result, it was the ALJ's responsibility to recognize the need for further medical evaluations of Stone's condition before making his RFC assessment. *See, e.g., Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000).

On remand, the ALJ should also be mindful of a couple of potential pitfalls when assessing the limitations suffered by Stone as a result of her anxiety and depression. Should the ALJ want to again discount the extent of Stone's mental health problems because Stone engaged in "little treatment" (R. at 21, 25), he should at least acknowledge the medical records revealing that counseling didn't offer Stone any relief, she didn't like the way Cymbalta made her feel, and other medication didn't seem to help (R. at 664-68, 679-82, 694-96). *See Myles v. Astrue,* 582 F.3d 672, 677 (7th Cir. 2009) (stating that the ALJ was required by Social Security Rulings to consider explanations for instances where the plaintiff did not keep up with treatment); SSR 16-3p. Moreover, the mere fact that Stone wasn't hospitalized, as the ALJ noted, does not prevent her from establishing a severe mental impairment. *See Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004); *see also, Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (noting that "[t]he institutionalization of the mentally ill is generally reserved for persons who are

---

[5] Which also renders without merit the defense's argument that the ALJ's consideration of the entire record would sufficiently support his decision, where the ALJ's discussion of the actual medical evidence was flawed for the reasons explained herein.

suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves.").

## V.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED: March 6, 2019

                              /s/ JON E. DEGUILIO
                              Judge
                              United States District Court